## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 20 2015, 8:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kevin Watson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

February 20, 2015

Court of Appeals Case No.
49A02-1408-CR-536

Appeal from the Marion Superior Court

The Honorable David Cook, Judge

Case No. 49F07-1402-CM-5423

**Vaidik, Chief Judge**

# Case Summary

[1]    Kevin Watson was convicted of Class A misdemeanor battery after a fight with his half-sister. On appeal, Watson argues that the State failed to rebut his self-defense claim. Because we conclude that the evidence is sufficient to rebut Watson's self-defense claim, we affirm.

# Facts and Procedural History

[2]    Kevin Watson's mother died in January 2014. Watson's mother had another child, Krisheena Watts, Watson's half-sister. Shortly after her death, Watson began making funeral arrangements at Indiana Funeral Care in Indianapolis. He did not tell Krisheena that their mother had died, nor did he tell her about the funeral arrangements. *See* Tr. p. 8, 15, 29, 99. In fact, Watson told the funeral-home employees that he was his mother's only child. *Id.* at 14, 16-17, 48, 52.

[3]    Krisheena eventually learned that her mother had died, and she called local funeral homes in an attempt to learn where her mother's funeral would be held. *Id.* at 8-9, 29. When she learned that Watson had made funeral arrangements at Indiana Funeral Care, she arranged to meet with the funeral home's director, Felicia Dillette. *Id.* at 48. Dillette called Watson and informed him that Krisheena had contacted her. *Id.* Dillette asked Watson to attend her meeting with Krisheena. *Id.* at 48-49.

[4]     A number of Watson's and Krisheena's family members attended the meeting. *Id.* at 11, 34-35, 49. The meeting did not go well; Watson and Krisheena exchanged words, and Watson struck Krisheena. Watson was arrested and charged with Class A misdemeanor battery. *See* Appellant's App. p. 12 (charging information). Watson's bench trial was held on June 5, 2014.

[5]     At trial, Krisheena testified about the meeting at the funeral home. She described Watson as "aggressive, hostile, and shocked that she found out where [her] mother's remains were at." Tr. p. 10. Krisheena described what happened next:

> What happened was in the room I showed them my birth certificate, my social security card, my identification, my father showed his identification and his social security card, and then Mr. Watson shouted, uh, "she's my half-sister, she's my half-sister" and I stated "yes, I'm your half-sister because your father f**** little girls and my father doesn't," and that's when he struck me.

[6]     *Id.* at 11-12. Watson struck Krisheena with "his open hand, his palm hit [her] bottom jaw, clinched [her] jaw, and [she] fell out of the chair hitting . . . [her] right elbow." *Id.* at 12.

[7]     Two witnesses—Dillette and another funeral-home employee—also testified that Watson struck Krisheena. *See id.* at 36 (Sara Thompson: "[Watson], at one point, [Watson], uh, pushed Krisheena."), 41 (Felicia Dillette: "[Watson] pushed his sister Krisheena and she fell over . . . ."). Although Dillette and Thompson confirmed that Krisheena "got up in [Watson's] face," they testified

that Krisheena never touched Watson, and Watson was the aggressor. *Id.* at 11-12, 36, 41, 56.

[8] Watson claimed self-defense. He testified that Krisheena attacked him, saying that she "came at [him] swinging" and that he "automatically went into defense mode" and began "blocking her hits." *Id.* at 95, 100.

[9] At the conclusion of the evidence, the trial court stated that

> the only individual who indicated that Krisheena Watts was the initial aggressor was uh, Mr. Watson, the defendant. No other person that witness[ed] this from whatever view or angle . . . saw . . . the events that Mr. Watson says, this hitting and fighting and then the block[ing] a bunch of blows and swings. [N]one of the other State's witnesses or the Defense's witnesses saw that as a . . . fact. Um, [Krisheena] may have jumped up in [Watson's] face, after hearing her testimony I believe that's probably true. [B]ut the law [looks] to who is the initial aggressor and the criminality begins when someone lays their hands on another person. Words don't justify the physical action [] and [] the court doesn't find that there's any credible evidence of self-defense here.

*Id.* at 114-15.

[10] The Court found Watson guilty of Class A misdemeanor battery and sentenced him to 365 days in the Department of Correction, with 297 days suspended and credit for 68 days served. Appellant's App. p. 9 (Abstract of Judgment).

[11] Watson now appeals.

# Discussion and Decision

[12]     Watson argues that the State failed to rebut his self-defense claim.  We disagree.

[13]     The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency-of-the-evidence claim.  *Wilson v. State*, 770 N.E.2d 799, 801 (Ind. 2002).  We neither reweigh the evidence nor judge the credibility of witnesses.  *Id.*  If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the judgment will not be disturbed.  *Id.*

[14]     A valid claim of self-defense is legal justification for an otherwise criminal act.  *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011).  In order to prevail on his claim of self-defense, Watson had to show that he was protecting himself from what he "reasonably believe[d] to be the imminent use of unlawful force," Ind. Code § 35-41-3-2(c), and that he was in a place where he had a right to be and he acted without fault.  *Coleman*, 946 N.E.2d at 1165.  Once a defendant claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt for the defendant's claim to fail.  *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999).  The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief.  *Id.*  Whether the State has met its burden is a question of fact for the trier of fact.  *Id.*  Self-defense is generally unavailable to a defendant who is the initial aggressor.  *Id.*; *see also* I.C. § 35-41-3-2(g)(3).

[15] The State disproved Watson's self-defense claim by establishing that he was the initial aggressor and therefore at fault. Krisheena testified that she and Watson exchanged words and then he struck her. Two funeral-home employees who witnessed the altercation testified that Watson struck Krisheena and knocked her down. The funeral-home employees testified that Watson, not Krisheena, was the initial aggressor. Although Watson testified that Krisheena struck him first, *see* Tr. p. 115, the trial court concluded that his testimony was not credible, and we will not reweigh the evidence nor judge the credibility of witnesses. *See Wilson*, 770 N.E.2d at 801. We conclude that the evidence is sufficient to rebut Watson's self-defense claim.

Affirmed.

Baker, J., and Riley, J., concur.